**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 16-7056

UNITED STATES OF AMERICA,

       Plaintiff – Appellee,

       v.

THILO BROWN,

       Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina at Charleston. Patrick Michael Duffy, Senior U. S. District Court Judge. (2:02-cr-00519-PMD-1; 2:16-cv-268-PMD)

Argued: May 11, 2017                      Decided: August 21, 2017

Before GREGORY, Chief Judge, and DUNCAN and DIAZ, Circuit Judges

Affirmed by published opinion. Judge Duncan wrote the opinion, in which Judge Diaz joined. Chief Judge Gregory wrote a dissenting opinion.

**ARGUED:** Alicia Vachira Penn, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, South Carolina, for Appellant. William Camden Lewis, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:** Beth Drake, United States Attorney, Columbia, South Carolina, Marshall Taylor Austin, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

DUNCAN, Circuit Judge:

Petitioner-Appellant Thilo Brown appeals the district court's order dismissing his 28 U.S.C. § 2255 motion. This court granted Petitioner a certificate of appealability on the issue of whether, in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), his prior South Carolina conviction for assault on a police officer while resisting arrest, S.C. Code Ann. § 16-9-320(B) ("Resisting-Arrest Assault Conviction"), qualifies as a predicate "crime of violence" for career-offender status under the Sentencing Guidelines, U.S.S.G. §§ 4B1.1(a), 4B1.2(a) (2002). For the reasons that follow, we affirm the district court.

Petitioner can succeed only if, inter alia, a Supreme Court precedent has rendered his motion timely by *recognizing* a new right entitling him to relief. 28 U.S.C. § 2255(f)(3). As the dissent acknowledges, neither *Johnson*, nor *Beckles*, nor any other Supreme Court case has recognized the specific right on which Brown seeks to rely.[1] *See Johnson*, 135 S. Ct. at 2555–56, 2560, 2563; *Beckles*, 137 S. Ct. 886, 895 (2017); *see also id.* at 903 n.4 (Sotomayor, J., concurring). With respect for its view, we are constrained by the Antiterrorism and Effective Death Penalty Act (AEDPA) jurisprudence from extrapolating beyond the Supreme Court's holding to apply what we view as its "reasoning and principles" to different facts under a different statute or

---

[1] The dissent specifically recognizes that *Beckles* leaves open the question of whether *Johnson* applies under a mandatory-guidelines regime and quotes from Justice Sotomayor's concurring opinion in *Beckles* to that effect. *See infra* at 22. If a question is expressly left open, then the right, *by definition*, has not been recognized.

2

sentencing regime. We are thus compelled to affirm the dismissal of Petitioner's motion as untimely under 28 U.S.C. § 2255(f)(3).

## I.

## A.

On March 19, 2003, Petitioner pleaded guilty to possession with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) ("Drug Offense"), and to carrying a firearm during the commission of a drug crime in violation of 18 U.S.C. § 924(c) ("Firearm Offense"). J.A. 83. At sentencing, the district court designated Petitioner a career offender under U.S.S.G. § 4B1.1(a) (2002) because he had a prior felony conviction that qualified as a predicate controlled-substance offense,[2] and his prior Resisting-Arrest Assault Conviction qualified as a predicate crime-of-violence offense. J.A. 90, 91; U.S.S.G. § 4B1.2(a) (2002). Because the district court sentenced Petitioner on July 14, 2003, before *United States v. Booker*, 543 U.S. 220 (2005), Petitioner's career-offender status resulted in a mandatory guideline range of 262–327 months for the Drug Offense and a minimum consecutive sentence of sixty months for the Firearm Offense.[3] J.A. 89–

---

[2] Petitioner stipulated in his plea agreement that he had a prior felony drug conviction for trafficking crack cocaine, and agreed not to contest the government's filing of an information, rendering him subject to a mandatory minimum sentence of 20 years (240 months) for his Drug Offense. 21 U.S.C. § 851.

[3] The Firearm Offense carried a mandatory minimum penalty of five years to life imprisonment, to run consecutively to any other term of imprisonment imposed. 18 U.S.C. § 924(c); J.A. 79–80, 90.

102.  Petitioner received a total sentence of 322 months--the low end of the guidelines' range for both offenses and well within the range of permissible statutory sentences that the district court could have imposed.  J.A. 8–9.  The district court entered judgment against Petitioner on July 21, 2003.  J.A. 8–9.  Petitioner did not appeal.

B.

On June 26, 2015--after Petitioner's conviction became final for purposes of direct review, but before Petitioner filed any 28 U.S.C. § 2255 motion--the Supreme Court decided *Johnson*.  135 S. Ct. at 2555.  In *Johnson*, the Court held that ACCA's residual clause was void for vagueness.  *Id.* at 2560, 2563.[4]

On January 28, 2016, Petitioner filed a 28 U.S.C. § 2255 motion to vacate his sentence.  Relying on *Johnson*, Petitioner argued that his prior Resisting-Arrest Assault Conviction could no longer serve as a predicate crime of violence under U.S.S.G. § 4B1.2(a) (2002), and therefore, his earlier designation as a career offender was unjustified.  J.A. 19–23, 45–54.  Petitioner's argument rested on the premise that *Johnson*'s holding invalidated not only ACCA's residual clause, but also like-worded residual clauses in the Sentencing Guidelines.  On June 17, 2016, the district court dismissed Petitioner's motion with prejudice and declined to issue a certificate of

---

[4] ACCA imposes a statutorily mandated 15-year minimum prison term for a person who violates 18 U.S.C. § 922(g) and has three previous convictions that qualify as either a "serious drug offense" or a "violent felony."  18 U.S.C. § 924(e)(1).  Prior to *Johnson*, a crime qualified as a "violent felony" under ACCA's residual clause if it "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another."  *Id.* § 924(e)(2)(B)(ii).

appealability.    J.A. 37–44.    Petitioner appealed and moved for a certificate of appealability on August 5, 2016.  On December 7, 2016, this court granted Petitioner a certificate of appealability on the issue of whether his prior Resisting-Arrest Assault Conviction qualifies as a predicate offense for career-offender status in light of *Johnson*. [5]

## II.

On appeal, Petitioner relies on 28 U.S.C. § 2255(f)(3) to render his motion timely. Under § 2255(f)(3), a petitioner can file a § 2255 motion relying on a right newly recognized by the Supreme Court provided that, inter alia, he files within a one-year window running from "the date on which the right asserted was initially recognized by the Supreme Court." *Id.* § 2255(f)(3).

Petitioner acknowledges, as he must, that the Supreme Court's recent holding in *Beckles*, forecloses his argument that *Johnson* explicitly invalidated all residual clauses with wording similar to ACCA's invalidated residual clause.  Petitioner nevertheless urges this court to extrapolate a recognized right from *Booker*, *Johnson*, and *Beckles*, read together.  Petitioner and the dissent maintain that we can find his asserted right in the

---

[5] Although Petitioner raised other arguments for vacating his sentence before the district court, we only granted a certificate of appealability as to whether his prior Resisting-Arrest Assault Conviction qualifies as a predicate offense for career-offender status in light of *Johnson*.  If we were inclined to agree with Petitioner's argument that his prior conviction did not qualify under the applicable residual clause, U.S.S.G. § 4B1.2(a)(2) (2002), we would normally have to decide whether his prior conviction would nevertheless qualify as a predicate career-offender conviction under the applicable force clause, U.S.S.G. § 4B1.2(a)(1) (2002).  However, before oral argument, the government withdrew its argument that Petitioner's prior Resisting-Arrest Assault Conviction qualifies as a predicate offense for career-offender status under the applicable force clause.  Beth Drake, Letter to the Fourth Circuit (May 8, 2017).  Therefore, the success of Petitioner's appeal rises and falls on his residual-clause argument.

principles animating these decisions even though none of them, nor any other Supreme Court precedent, have recognized a right to challenge the pre-*Booker* mandatory Sentencing Guidelines as void for vagueness and despite the fact that the *Beckles* Court expressly declined to address the issue of whether the pre-*Booker* mandatory Sentencing Guidelines are amenable to void-for-vagueness challenges. *See Beckles*, 137 S. Ct. at 895; *see also id.* at 903 n.4 (Sotomayor, J., concurring).

We review de novo the question presented on appeal. *See United States v. Diaz-Ibarra*, 522 F.3d 343, 347 (4th Cir. 2008); *United States v. Thompson*, 421 F.3d 278, 280–81 (4th Cir. 2005). As explained below, because of the procedural posture we are compelled to affirm.

## A.

In accordance with Congress's intent to limit the number of collateral-review cases before federal courts and to respect the finality of convictions, the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of 8, 18, 22, 28, 40, and 42 U.S.C.) ("AEDPA"), provides for a one-year statute of limitations for § 2255 motions. 28 U.S.C. § 2255(f). Normally, for a motion to be timely under § 2255(f), a petitioner must file for relief within one year of the date that his judgment of conviction becomes final. *See id.* § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 525 (2003). However, under § 2255(f)(3), courts will consider a petitioner's motion timely if (1) he relies on a right recognized by the Supreme Court after his judgment became final, (2) he files a motion within one year from "the date on which the right asserted was initially recognized by the

6

Supreme Court," 28 U.S.C. § 2255(f)(3), and (3) the Supreme Court or this court has made the right retroactively applicable. *See Dodd v. United States*, 545 U.S. 353, 358–59 (2005); *United States v. Mathur*, 685 F.3d 396, 397–98 (4th Cir. 2012); *United States v. Thomas*, 627 F.3d 534, 536–37 (4th Cir. 2010). Although this court can render a right retroactively applicable, only the Supreme Court can *recognize* a new right under § 2255(f)(3). *See Dodd*, 545 U.S. at 357–59; *Thomas*, 627 F.3d at 536–37; *see also Mathur*, 685 F.3d at 399–401. Consequently, to find Petitioner's motion timely, we must conclude that it relies on a right "recognized" in *Johnson* or another more recent Supreme Court case. *See Dodd*, 545 U.S. at 357–59; *see also Mathur*, 685 F.3d at 399–401. "As with any question of statutory interpretation, our analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009).

To "recognize" something is (1) "to acknowledge [it] formally" or (2) "to acknowledge or take notice of [it] in some definite way." *Recognize*, Merriam-Webster Tenth Collegiate Dictionary 976 (1996); *see also Tapia v. United States*, 564 U.S. 319, 327 (2011). Thus, a Supreme Court case has "recognized" an asserted right within the meaning of § 2255(f)(3) if it has formally acknowledged that right in a definite way. *Cf. Williams v. Taylor*, 529 U.S. 362, 412 (2000) (interpreting the phrase "clearly established Federal law, as determined by the Supreme Court" within another provision of AEDPA to mean "the holdings, as opposed to the dicta" of Supreme Court precedent). Correspondingly, if the existence of a right remains an open question as a matter of Supreme Court precedent, then the Supreme Court has not "recognized" that right. *Cf. Tyler v. Cain*, 533 U.S. 656, 662–64 (2001) (interpreting the word "made" within

7

another provision of AEDPA--"made retroactive to cases on collateral review by the Supreme Court"--to mean "held").

B.

We now turn to the right Petitioner claims the Supreme Court recognized in *Johnson*. Petitioner's motion relies on a claimed due-process right to have his guidelines' range calculated without reference to an allegedly vague Sentencing Guidelines' provision, despite the fact that the district court imposed his sentence within permissible statutory limits. Regrettably for Petitioner, the Supreme Court did not recognize such a right in *Johnson*. While *Johnson* did announce a retroactively applicable right, *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016), *Johnson* dealt only with the residual clause of ACCA--a federal enhancement statute, *Johnson*, 135 S. Ct. at 2555–56. *Johnson* did not discuss the mandatory Sentencing Guidelines' residual clause at issue here or residual clauses in other versions of the Sentencing Guidelines. *See id.* at 2555–56.

C.

Petitioner urges this court to cobble together a right by combining *Johnson*'s reasoning with that of two other Supreme Court cases, *Booker* and *Beckles*. Petitioner's three-case extrapolation begins with the unobjectionable premise that *Booker* recognized a constitutional distinction between mandatory Sentencing Guidelines and advisory Sentencing Guidelines. *Booker*, 543 U.S. at 245. Moving on from *Booker*, Petitioner argues that the mandatory Sentencing Guidelines cabined a sentencing judge's discretion in a manner that raises the same concerns animating the Supreme Court's decision in

8

*Johnson*: denying fair notice to defendants and inviting arbitrary enforcement by judges. *Johnson*, 135 S. Ct. at 2557. To prove this point, Petitioner points to several related cases in the lower courts, which he claims serve as evidence that "the mandatory Guidelines look and act like the ACCA." Reply Br. at 18. Finally, Petitioner points out that the *Beckles* Court carefully limited its holding to the *advisory* Sentencing Guidelines, thus, in his view, leaving open the question of whether defendants could challenge sentences imposed under the mandatory Sentencing Guidelines as void for vagueness. *Beckles*, 137 S. Ct. at 895; *see also id.* at 903 n.4 (Sotomayor, J., concurring).

Yet Petitioner's argument is self-defeating. If the Supreme Court left open the question of whether Petitioner's asserted right exists, the Supreme Court has not "recognized" that right. *See supra* Part II.A.

While the residual clause at issue here mirrors the residual clause at issue in *Johnson*, the *Beckles* Court made clear that the right announced in *Johnson* did not automatically apply to all similarly worded residual clauses. *See Beckles*, 137 S. Ct. at 890; *see also United States v. Mack*, 855 F.3d 581, 585 (4th Cir. 2017). *Beckles* specifically held that *Johnson* failed to invalidate the advisory Sentencing Guidelines' former definition of "crime of violence," U.S.S.G. § 4B1.2(a)(2) (2006), which was "identically worded" to ACCA's residual clause. *Beckles*, 137 S. Ct. at 890. As Petitioner himself points out, the *Beckles* Court carefully crafted its holding to avoid deciding whether the logic of *Johnson* applied outside the context of ACCA. *See id.*; *see also Mack*, 855 F.3d at 585. Hence, *Beckles* confirms that the Supreme Court has yet to

9

recognize a broad right invalidating all residual clauses as void for vagueness simply because they exhibit wording similar to ACCA's residual clause.[6]

In short, Petitioner's cited cases do not recognize, and the dissent does not point to, any right helpful to him.[7] *Johnson* only recognized that ACCA's residual clause was unconstitutionally vague, 135 S. Ct. at 2557; it did not touch upon the residual clause at issue here. Likewise, *Beckles* only recognized that the advisory Sentencing Guidelines are not amenable to vagueness challenges. 137 S. Ct. at 895. In a future case, the Supreme Court may agree with an argument similar to Petitioner's that because the challenged residual clause looks like ACCA and operates like ACCA, it is void for vagueness like ACCA. *See id.* at 892 n.2 (noting former circuit split). But *Beckles* demonstrates that quacking like ACCA is not enough to bring a challenge within the purview of the right recognized by *Johnson*. Accordingly, at least for purposes of

---

[6] Prior to *Beckles*, the majority of circuits held that *Johnson*'s holding extended to like-worded residual clauses in versions of the advisory Sentencing Guidelines, *see Beckles*, 137 S. Ct. at 892 n.2 (surveying cases), but *Beckles* ultimately reached the contrary conclusion, *id.* at 890 ("This Court held in *Johnson* . . . that the identically worded residual clause in the [ACCA] was unconstitutionally vague. Petitioner contends that the [advisory] Guidelines' residual clause is also void for vagueness. Because we hold that the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause, we reject petitioner's argument.").

[7] Petitioner's motion would also be untimely to the extent it relies on the general principles of due-process jurisprudence noted in *Johnson*, principles recognized long before *Johnson* which provide too broad a standard to constitute a right or rule in other similar contexts. *Cf. Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (noting, for qualified-immunity purposes, that requiring a clearly established rule "depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified," and explaining that the right to "due process of law" is too abstract to provide a workable standard in every case); *Chaidez v. United States*, 568 U.S. 342, 347–48 (2013).

10

collateral review, we must wait for the Supreme Court to recognize the right urged by Petitioner. *See Dodd*, 545 U.S. at 359. We hold that Petitioner raises an untimely motion in light of § 2255(f)(3)'s plain language, the narrow nature of *Johnson*'s binding holding, and *Beckles*'s indication that the position advanced by Petitioner remains an open question in the Supreme Court.

D.

We note as well that our recent decision in *In re Hubbard*, 825 F.3d 225 (4th Cir. 2016), is not to the contrary. The relief sought by the Petitioner contrasts sharply with the relief this court granted to the movant in *Hubbard.* Here, unlike in *Hubbard,* we consider Petitioner's arguments after authorizing this appeal through a certificate of appealability and in a post-*Beckles* world. To grant Petitioner's requested relief we must confront the timeliness issue: whether he can rely on *Johnson* as a rule "recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3).

The threshold certification inquiry in *Hubbard* concerned whether the movant could make a prima facie showing that his application relied on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2); *see also id*. § 2244(b)(3)(C); *In re Hubbard*, 825 F.3d at 228; *In re Vassell*, 751 F.3d 267, 270–71 (4th Cir. 2014). In this circuit, making such a prima facie showing requires the movant to meet a relatively low bar, *In re Hubbard*, 825 F.3d at 231; and this court does not need to reach "the question of the successive motion's timeliness at the gatekeeping stage," *In re Vassell*, 751 F.3d at 271.

11

Consistent with what is required of this court at the 28 U.S.C. § 2255(h)(2) stage, we did not consider the timeliness of the movant's underlying merits argument. Instead we assumed, prior to the Supreme Court's resolution of *Beckles*, that disagreement among the federal courts of appeals on *Johnson*'s application to other residual clauses was "likely . . . enough to establish that [the petitioner] has made 'a sufficient showing of possible merit to warrant a fuller exploration by the district court,' . . . confirmed by [this court's] own 'glance' at the government's merits arguments." *In re Hubbard*, 825 F.3d at 232 (internal citation omitted).

Today's narrow holding, like the holding of *Hubbard*, is compelled by this case's procedural posture. Had this case come before us on direct appeal, we might have had the inferential license necessary to credit Petitioner's interpretations of the negative implications found in *Booker*, *Johnson*, and *Beckles*. Unfortunately for Petitioner, we must consider his argument through the narrow lens that § 2255(f) affords this court on collateral review.

## III.

We are constrained from reading between the lines of *Booker*, *Johnson*, and *Beckles* to create a right that the Supreme Court has yet to recognize. We are compelled to affirm because only the Supreme Court can recognize the right which would render Petitioner's motion timely under § 2255(f)(3).

*AFFIRMED*

12

GREGORY, Chief Judge, dissenting:

To take advantage of 28 U.S.C. § 2255(f)(3), a petitioner must first assert a right newly recognized by the Supreme Court. The majority reads this to mean that a petitioner must assert the right as expressed in the Supreme Court's narrow holding newly recognizing that right, and where the four corners of that holding do not encompass the precise facts underlying a petitioner's claim, § 2255(f)(3) is not satisfied. But § 2255(f)(3) contains no such requirement, and in my view, a newly recognized right is more sensibly read to include the reasoning and principles that explain it. And where a petitioner asserts *that* right, with all its contours and complexities, I would find that he or she satisfies § 2255(f)(3).

In *Johnson*, the Supreme Court recognized a defendant's right not to have his or her sentence fixed by the application of the categorical approach to an imprecise and indeterminate sentencing provision, and it struck down the ACCA's residual clause as inconsistent with that newly recognized right. Because Brown asserts that same right, I would find his petition timely under § 2255(f)(3), even though his challenge is to the residual clause under the mandatory Sentencing Guidelines, rather than the ACCA. I would further find that *Johnson* compels the conclusion that the residual clause under the mandatory Guidelines is unconstitutionally vague, and I would grant Brown's petition and remand for resentencing. Accordingly, I must respectfully dissent.

13

I.

On March 19, 2003, Brown pleaded guilty to possession with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(iii), and to carrying a firearm during the commission of a drug crime, in violation of 18 U.S.C. § 924(c). J.A. 11. The presentence investigation report ("PSR") indicated that Brown was eligible for the career-offender enhancement under the mandatory Sentencing Guidelines, based on his prior felony convictions for drug trafficking and assault on a police officer while resisting arrest. J.A. 90. The PSR assigned Brown an offense level of 34, J.A. 90, and a criminal history category of VI, J.A. 96. According to the PSR, Brown's mandatory Guidelines range was therefore 262–327 months in prison for the drug charge, and 60 months to life for the firearm charge, to run consecutively to any other term of imprisonment. J.A. 102.

The district court adopted the PSR's factual findings and Guideline applications, and on July 14, 2003, sentenced Brown to 322 months in prison. Brown's sentence consisted of 262 months for the drug charge and 60 months for the firearm charge. J.A. 8–9. Brown did not appeal his sentence.

On January 28, 2016—more than twelve years later—Brown filed a 28 U.S.C. § 2255 motion to vacate his sentence. J.A. 19–23. He argued that the Supreme Court's June 26, 2015 decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), rendered his motion timely because he was asserting *Johnson*'s newly recognized right—made retroactively applicable on collateral appeal—within one year of the Court's recognition of that right. *See* 28 U.S.C. § 2255(f)(3). In *Johnson*, the Court held that the ACCA's

residual clause was unconstitutionally vague. Brown argued that the identically worded provision in § 4B1.2(a)(2) of the mandatory Sentencing Guidelines was therefore also void for vagueness. J.A. 20. And, he contended, because his assault conviction did not constitute a crime of violence under the Guidelines' force clause and was not an enumerated offense—the only other avenues for categorizing a prior offense as a crime of violence—his conviction did not qualify as a crime of violence under the mandatory Guidelines. J.A. 20–22.[1] He further argued that his felony conviction for drug trafficking was not a controlled substance offense. J.A. 22. Brown argued that in light of these errors, he should not have been designated a career offender under the mandatory Sentencing Guidelines and was entitled to resentencing.

The district court did not address whether Brown's argument regarding the assault claim was timely in light of *Johnson*, but instead went directly to the merits of the claim. J.A. 38. The court concluded that because Brown's assault conviction qualified as a crime of violence under the Guidelines' force clause, it did not need to reach the question

---

[1] Under the mandatory Sentencing Guidelines, § 4B1.2(a) reads in full:
The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
  (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

  (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S. Sentencing Guidelines Manual § 4B1.2(a) (U.S. Sentencing Comm'n 20002) (emphasis added). Section 4B1.2(a)(1) is the force clause, and § 4B1.2(a)(2) consists of the enumerated-offense and residual clauses, with the residual clause denoted above in italics.

15

of whether the conviction was a crime of violence under the Guidelines' residual clause—or whether the residual clause was still valid in light of *Johnson*. J.A. 40. And, the court found, Brown's argument that his drug trafficking conviction was not a controlled substance offense was "not based at all on *Johnson*," but rather was "simply an unrelated claim that this Court erred when it sentenced Brown in 2003." J.A. 42. The court stated that Brown could not "use *Johnson* to revive an untimely, unrelated claim," and it rejected his drug trafficking claim without discussing the merits. J.A. 42. The court dismissed Brown's § 2255 motion with prejudice and declined to grant a certificate of appealability ("COA"). J.A. 43. Brown timely appealed and moved for a COA.

This Court subsequently granted Brown a COA "on the issue of whether assault on a police officer while resisting arrest under South Carolina law qualifies as a predicate offense for career offender status in light of *Johnson v. United States*." Order, *United States v. Thilo Brown*, No. 16-7056 (4th Cir. Dec. 7, 2016), ECF No. 14.[2]

## II.

As the majority recognizes, a threshold issue for this Court is whether Brown's § 2255 petition is timely. Under 28 U.S.C. § 2255(f)(1), a petitioner has one year from the date that his or her judgment of conviction becomes final to attack the corresponding sentence. Because Brown's judgment of conviction has been final for more than a decade, to bring a § 2255 petition, he must satisfy one of § 2255(f)'s other conditions for

---

[2] Because we granted a COA only as to Brown's argument regarding his assault conviction, the question of whether his South Carolina drug trafficking conviction constitutes a controlled substance offense under the Guidelines is not before this Court.

restarting the limitations period. Here, he relies on § 2255(f)(3), which permits a § 2255 petition that "assert[s] . . . a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review" within one year of the Supreme Court's recognition of the right. 28 U.S.C. § 2255(f)(3); *see also Dodd v. United States*, 545 U.S. 353, 357–58 (2005) (describing § 2255(f)(3) as requiring that "(1) the right asserted by the applicant was initially recognized by this Court; (2) this Court newly recognized the right; and (3) a court must have made the right retroactively applicable to cases on collateral review" (internal quotation marks omitted)). Brown argues that his § 2255 petition is timely because he filed it within one year of the Supreme Court's decision in *Johnson*, which the Court subsequently held retroactively applicable to cases on collateral review in *Welch v. United States*, 136 S. Ct. 1257 (2016). I agree, and unlike the majority, I would find Brown's petition timely.

It is well-settled in this Circuit that the *Johnson* Court recognized a new constitutional rule, and that the *Welch* Court made that rule retroactively applicable to cases on collateral review. *In re Hubbard*, 825 F.3d 225, 228 (4th Cir. 2016) ("*Johnson* announced a new rule of constitutional law that the Supreme Court made retroactive . . . .").[3] And it is undisputed that Brown filed his § 2255 motion within one year of

---

[3] Although the *Welch* Court describes *Johnson* as newly recognizing a "rule," rather than a "right," courts, including this one, use the terms interchangeably. *See, e.g.*, *United States v. Powell*, 691 F.3d 554 (4th Cir. 2012) (calling it "well settled" that the analysis in *Teague v. Lane*, 489 U.S. 288 (1989), which discusses what constitutes a newly recognized *rule*, governs whether a new *right* is retroactively applicable under § 2255(f)(3)). And courts have described *Johnson* as recognizing a new "right" for purposes of § 2255(f)(3). *See, e.g.*, *Holt v. United States*, 843 F.3d 720, 723 (7th Cir. (Continued)

*Johnson* and *Welch*. The only question for this Court's timeliness inquiry, then, is whether Brown *is asserting* that particular right in his § 2255 petition. Or, said another way, the question is whether *Johnson* newly recognized a right that would permit Brown to collaterally attack, through § 2255(f)(3), the constitutionality of his sentence, which was enhanced under the residual clause in the mandatory Sentencing Guidelines. A logical starting point for the analysis is therefore the contours of the right that the Supreme Court newly recognized in *Johnson*.

## A.

In *Johnson*, the Supreme Court held that the ACCA's residual clause was unconstitutionally vague in violation of the Fifth Amendment's Due Process Clause. *Johnson*, 135 S. Ct. at 2555–57. It based its holding on the principle that "the Government violates [due process] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement," *id.* at 2556, finding that this principle applies to "statutes fixing sentences" just as it applies to "statutes defining elements of crimes," *id.* at 2557.

The ACCA's residual clause defined a violent felony as "any crime punishable by imprisonment for a term exceeding one year" that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

---

2016) (stating that in *Welch*, the Court "newly recognized the *right* [in *Johnson*] to be retroactive" (emphasis added)). Therefore, I use "rule" and "right" interchangeably.

To determine whether a particular crime qualified as a violent felony under the ACCA's residual clause, courts had to use the "categorical approach" to "picture the kind of conduct that the crime involves in 'the ordinary case,' and to judge whether that abstraction present[ed] a serious potential risk of physical injury." *Johnson*, 135 S. Ct. at 2557 (quoting *James v. United States*, 550 U.S. 192, 208 (2007), *overruled by Johnson*, 135 S. Ct. 2551). According to the *Johnson* Court, this inquiry "le[ft] grave uncertainty about how to estimate the risk posed by a crime" and "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Id.* "The residual clause," the Court concluded, "offer[ed] no reliable way to choose . . . what [an] 'ordinary' [non-enumerated crime] involves." Even more, said the Court, "the residual clause le[ft] uncertainty about how much risk it takes for a crime to qualify as a violent felony" by requiring courts "to apply an imprecise 'serious potential risk' standard . . . to a judge-imagined abstraction." *Id.* at 2558. In light of this, the Court held that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges," and thus, "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Id.* at 2557.

In *Welch*, the Court held that *Johnson* is a substantive decision that is retroactively applicable to cases on collateral review. 136 S. Ct. at 1265. Discussing *Johnson*'s holding, the *Welch* Court explained that "[t]he vagueness of the residual clause rests in large part on its operation under the categorical approach, . . . because applying [the residual clause's serious potential risk] standard under the categorical approach required

19

courts to assess the hypothetical risk posed by an abstract generic version of the offense." *Id.* at 1262. And because *Johnson* struck down the ACCA's residual clause as void for vagueness, the clause "can no longer mandate or authorize any sentence," explained the *Welch* Court. *Id.* at 1265. "*Johnson* establishes, in other words, that 'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause." *Id.* (quoting *United States v. U.S. Coin & Currency*, 401 U.S. 715, 724 (1971)). In sum, *Johnson* and *Welch* established that a defendant's due process rights are violated when a court, using the categorical approach, fixes that defendant's sentence based on a statute that fails to provide proper notice of what constitutes criminal conduct and requires courts to apply imprecise and indeterminate standards. *See id*; *see also Johnson*, 135 S. Ct. at 2557.

Subsequently, in *Beckles v. United States*, 137 S. Ct. 886 (2017), the Supreme Court sharpened the focus on this newly recognized right. There, the defendant filed a § 2255 motion to vacate his sentence on the grounds that after *Johnson*, the residual clause in the advisory Guidelines' definition of crime of violence was void for vagueness. *Id.* at 891.[4] The Court, relying heavily on the distinction between the advisory and mandatory Guidelines, held that "the advisory Guidelines are not subject to vagueness

---

[4] Beckles's § 2255 motion was timely because he brought it within one year of the date on which his conviction became final. *See* 28 U.S.C. § 2255(f)(1); *see also Beckles*, 137 S. Ct. at 891; *United States v. Beckles*, 565 F.3d 832 (11th Cir. 2009), *cert. denied*, 558 U.S. 906 (2009). Therefore, he did not need to demonstrate—nor did the Supreme Court need to consider—whether *Johnson* newly recognized a right that would allow Beckles to collaterally attack his advisory Guidelines sentence pursuant to 28 U.S.C. § 2255(f)(3).

challenges under the Due Process Clause." *Id.* at 890. This is because the advisory Guidelines "merely guide the district court's discretion," the Court explained, and "[u]nlike the ACCA, . . . the advisory Guidelines do not fix the permissible range of sentences." *Id.* at 892. "Rather, the Guidelines advise sentencing courts how to exercise their discretion within the bounds established by Congress." *Id.* at 895. Accordingly, the Court observed, "'[t]he due process concerns that . . . require notice in a world of mandatory Guidelines no longer' apply." *Id.* at 894 (alterations in original) (quoting *Irizarry v. United States*, 553 U.S. 708, 714 (2008)).

The *Beckles* Court thus excluded from the scope of *Johnson*'s rule those sentencing provisions that advise, but do not bind, a sentencing court. But in so doing, the Court did not disturb *Johnson*'s holding that where a vague sentencing provision operates to *fix* a defendant's sentence under the categorical approach, it *is* susceptible to attack under the Due Process Clause. Indeed, Justice Sotomayor, concurring in the judgment, noted that the majority opinion "at least leaves open the question whether defendants sentenced . . . during the period in which the Guidelines *did* fix the permissible range of sentences . . . may mount vagueness attacks on their sentences." *Id.* at 903 n.4 (Sotomayor, J., concurring in the judgment) (internal citations and quotation marks omitted).[5] Thus, the decision in *Beckles*, while shrinking the universe of

---

[5] The majority reads Justice Sotomayor's statement to mean that the question of whether the *Johnson* Court newly recognized a right applicable to a challenge to the mandatory Guidelines is still open. *See* Maj. Op. at 2 n.1, 6, 9. But Justice Sotomayor, in her concurrence, suggested only that the *merits* of such a challenge have not yet been decided. And she noted that the majority's decision in *Beckles* did not foreclose such a (Continued)

21

sentencing provisions susceptible to attack on vagueness grounds, reinforced that a defendant has the due process right—as newly recognized in *Johnson*—not to have his sentence fixed by the application of the categorical approach to an imprecise and indeterminate sentencing provision.

With the scope of *Johnson*'s right in mind, I next consider whether Brown can rely on that right to render his § 2255 motion timely.

B.

Brown contends that because the mandatory Sentencing Guidelines' residual clause is identical in text to the ACCA's residual clause, enhancements under both clauses were applied using the categorical approach, and the clauses were similarly used to fix, rather than advise, applicable sentencing ranges, he can rely on the right newly set forth in *Johnson* to challenge his career-offender status under the mandatory Guidelines. I consider his arguments in turn.

First, it is undisputed that the text of the residual clause under the mandatory Guidelines is identical to the text of the ACCA's residual clause. Both definitions include felonies that "involve[] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2); 18 U.S.C. § 924(e)(2)(B)(ii). Section 4B1.2(a)(2)'s

---

challenge. But she said nothing of timeliness under § 2255(f)(3), or whether the Court's *Beckles* decision would in any way undermine a petitioner's ability to bring a § 2255(f)(3) petition challenging the mandatory Guidelines in light of the right newly recognized in *Johnson*.

22

text therefore supports Brown's argument that *Johnson*'s newly recognized right is applicable to a challenge to § 4B1.2(a)(2)'s residual clause.

Second, courts applied the categorical approach to both residual clauses. Like courts applying the ACCA, "[i]n determining whether a prior conviction triggers a sentence enhancement under the Sentencing Guidelines, '[courts] approach the issue categorically, looking "only to the fact of conviction and the statutory definition of the prior offense."'" *United States v. Montes-Flores*, 736 F.3d 357, 364 (4th Cir. 2013) (quoting *United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013)). Accordingly, when courts categorized prior felony convictions as crimes of violence under the mandatory Guidelines' residual clause, they had to engage in the same "arbitrary enforcement," *Johnson*, 135 S. Ct. at 2556, as courts enhancing a sentence under the ACCA's residual clause. This too supports Brown's argument that *Johnson* is applicable to his challenge here.

Finally, like the residual clause at issue in *Johnson*, the mandatory Guidelines' residual clause imposed fixed, rather than advisory, sentencing ranges. When Brown was sentenced, the Supreme Court had not yet decided *United States v. Booker*, 543 U.S. 220, 245 (2005) (establishing Sentencing Guidelines as "effectively advisory"), and the Guidelines were still mandatory, operating like statutes to fix sentences. Before *Booker*, the Guidelines had "the force and effect of laws," *id.* at 234, and were considered indistinguishable from state laws, *id.* at 233 ("[T]here is no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue in [*Blakely v. Washington*, 542 U.S. 296 (2004)]."). While judges theoretically

23

had the ability to depart from the Guidelines' prescribed range, "departures [were] not available in every case, and in fact [were] unavailable in most." *Id.* at 234.[6] Instead, in most cases, the Guidelines took into account nearly all relevant factors for determining an individual's sentence, such that "no departure [was] legally permissible" and "the judge [wa]s bound to impose a sentence within the Guidelines range." *Id.* Like the ACCA's residual clause, then, the mandatory Guidelines' residual clause bound courts to impose sentences within the prescribed range.

The Court's decision in *Beckles*, while foreclosing void-for-vagueness challenges to the residual clause under the advisory Guidelines, shows that sentencing under the ACCA's residual clause and sentencing under the mandatory Guidelines' residual clause was the same. Indeed, the Court's decision in *Beckles* rested on the distinction between the mandatory and advisory Guidelines, with the advisory nature of the post-*Booker* Guidelines dictating a result different than in *Johnson*. The *Beckles* Court explained that, unlike the ACCA, "[t]he advisory Guidelines . . . do not implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement." *Beckles*, 137 S. Ct. at 894. This is because "even if a person behaves so as to avoid an enhanced sentence under the career-offender guideline, the sentencing court retains discretion to impose the enhanced sentence," *id.*, and the advisory Guidelines only

---

[6] Similarly, when district courts fix sentences under the ACCA, they are prohibited from sentencing a defendant below the statutory mandatory minimum, save for the relatively rare cases where the government has filed a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, or where the defendant qualifies for a safety-valve reduction under 18 U.S.C. § 3553(f).

"advise sentencing courts how to exercise their discretion within the bounds established by Congress" and do not "'establish[] minimum and maximum penalties for [any] crime,'" *id.* at 895 (quoting *Mistretta v. United States*, 488 U.S. 361, 396 (1989)). This is entirely different from the mandatory Guidelines, which "b[ou]nd judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases," *Mistretta*, 488 U.S. at 391, and "ha[d] the force and effect of laws, prescribing the sentences criminal defendants are to receive," *id.* at 413 (Scalia, J., dissenting). The considerations underlining the Court's decision in *Beckles* are simply not implicated here, where the residual clause operated just like a statute to fix Brown's sentence. If anything, then, *Beckles* clarifies *Johnson*'s animating principles and affirms that *Johnson*'s newly recognized right *does* apply to challenges to the residual clause under the mandatory Guidelines. Thus, contrary to the majority's view, Brown need not "cobble together a right by combining these [cases]," Maj. Op. at 8—the right he asserts stems from *Johnson*. *Beckles* and *Booker* merely reinforce that the right newly recognized in *Johnson* is indeed applicable to Brown's claim.

Ultimately, that the residual clause at issue here is contained in the mandatory Sentencing Guidelines, rather than the ACCA, is a distinction without a difference for purposes of this Court's timeliness inquiry. The clauses' text is identical, and courts applied them using the same categorical approach and for the same ends—to fix a defendant's sentence. The right newly recognized in *Johnson* is therefore clearly applicable to Brown's claim, because the mandatory Guidelines' residual clause presents the same problems of notice and arbitrary enforcement as the ACCA's residual clause at

25

issue in *Johnson*. The majority, by finding that a defendant sentenced under a nearly identical provision with nearly identical effects cannot assert the right newly recognized in *Johnson*, unnecessarily tethers that right to the ACCA itself, when the right clearly stems from the due process protections that prohibit such sentencing schemes more generally. This narrow view divests *Johnson*'s holding from the very principles on which it rests and thus unduly cabins *Johnson*'s newly recognized right.

I would find that Brown is asserting the right newly recognized in *Johnson*. And because this Court found that "the rule in *Johnson* is substantive with respect to its application to the [mandatory] Sentencing Guidelines and therefore applies retroactively," *Hubbard*, 825 F.3d at 235, I would find that Brown satisfies all of § 2255(f)(3)'s requirements. I would thus find his petition timely.

### III.

Lastly, I would find in favor of Brown on the merits of his claim. As previously discussed, first, the text of § 4B1.2(a)(2)'s residual clause is identical to the text of the ACCA's residual clause, which the Supreme Court held unconstitutionally vague in *Johnson*. Second, courts enhanced sentences under § 4B1.2(a)(2)'s residual clause using the categorical approach, just as they did when enhancing sentences under the ACCA's residual clause. And third, like the ACCA, the mandatory Guidelines fixed minimum and maximum sentences and bound courts to sentence within particular ranges. This case diverges from *Johnson* only because Brown's sentence was enhanced under the mandatory Guidelines, rather than the ACCA, but I can discern no principled reason that

26

such a distinction should dictate an outcome different than in *Johnson*, particularly where the concerns outlined in *Beckles* are not implicated.

As the Court recognized in *Johnson*, defendants have a due process right not to have their sentences enhanced by the application of the categorical approach to an imprecise and indeterminate sentencing provision. 135 S. Ct. at 2558. And as the Court made clear in *Beckles*, when such sentencing provisions set a fixed, rather than advisory, sentence under the categorical approach, they are void for vagueness. *See Beckles*, 137 S. Ct. at 892. Here, the district court applied the categorical approach to § 4B1.2(a)(2)'s residual clause, which fixed Brown's sentencing range—precisely what the *Johnson* Court said runs afoul of the Due Process Clause. These cases therefore compel the conclusion that under the mandatory Guidelines, § 4B1.2(a)(2)'s residual clause is unconstitutionally vague and cannot be the basis for enhancing Brown's sentence.

For all of these reasons, I would grant Brown's § 2255 motion and remand for resentencing.

27